Good morning, Your Honors. May it please the Court? Stephen Grude for Appellants. I'd like to reserve two minutes for rebuttal this morning. Can the panel hear me okay? Yes, in fact, you're a little loud. I'm sorry. I'm a bit of a loud talker. I'll try to soften it, Your Honor. This Court should reverse the lower court's ruling and find that Appellee is compelled to arbitrate his claims against Appellants pursuant to two separate arbitration agreements. The first is the owner-operator agreement that he executed in 2010 in which he manifested his assent to arbitrate in 2018 when he demanded arbitration with the American Arbitration Association, specifically referencing the agreement. And the second is the agreement in writing that was reached between me and his counsel by email following that initial demand for arbitration. Here, Appellee has argued that the first provision does not survive, but it survives for a number of reasons. The first is the presumption... It seems to me it's logically prior to ask whether it was an arbitration agreement, because if it's not an arbitration agreement, we don't even have jurisdiction. So the first question is, was there an arbitration agreement? Those are two different points, Your Honor. On the jurisdictional piece, the Court has jurisdictional because we requested... We moved to compel and stay under the FAA in section threes and four, provide the jurisdiction... Yes, for the jurisdiction to decide whether it was an arbitration agreement. But if it wasn't an arbitration agreement, doesn't everything else go up in smoke at that point? Well, no, because one is the merits and one is jurisdiction, Your Honor. So from the jurisdictional piece, if I could just finish the thought, the courts have held that where parties have moved to compel arbitration under the FAA under section three and four, the court has jurisdiction to hear it, even if the court decides that there's not an arbitration. So it wouldn't be dismissed for lack of jurisdiction. If the court found there wasn't an arbitration agreement, then we would lose on the merits, depending on how the court rules in that regard. Why would we then go on and decide the survivability issue? I'm sorry? In other words, at that point, if you have a non-arbitration agreement, then you don't have anything to be deciding with regard to whether it survived or didn't just survive. We have a non-arbitration agreement. And I'm just saying, I think the issue of whether it survived or didn't survive is a logically prior for another reason, which is that the cases that you're relying on to say that it does survive depend on it being arbitration. If it's not arbitration, then there's nothing, at least largely, I understand you argue that it doesn't matter, but there is no case that I know of, well, there's no presidential case, at least, in which a non-arbitration agreement was determined to survive. So it seems to me, at least I think, it's a logically prior question whether this was an arbitration. Fair enough, Your Honor. Survivability first, go ahead. No, well, Your Honor, first of all, there's two agreements. But the first agreement, by its plain language, was an agreement to resolve by alternative dispute resolution, which this Court has held in the Greenwood v. CompuCredit Corporation case in 2010, in looking at how ADR is defined in the dictionary, that arbitration is a form of ADR. And then what happened... It's not the only form, there are many forms that do say you had to arbitrate. Understood. The agreement did not say that you had to arbitrate. Understood, Your Honor. It had a form of ADR, and it also said you had to agree on it later. Agreed, Your Honor, but what makes this case different from most of the cases at both parties site is, in this case, the appellee, with very sophisticated counsel, wrote to AAA and wrote a demand and said, we demand to arbitrate, not just against the signatory, but against the two other corporate appellants, pursuant to a demand arbitration, specifically referencing the agreement. And they said it not once, but twice. They said it in the arbitration demand, and they said it again in their statement of claims. And then, lest there be any doubt about it, when AAA wrote and said, hey, we received an arbitration agreement, if you look on page 117 of the record, I wrote them back and said, hey, we haven't received a demand for arbitration, but given that there's an arbitration, demand has been served. And I started talking about the request for payment being premature. So there was never any disagreement amongst the parties that there was an agreement to arbitrate here. What's the contractual language where it says the parties, quote-unquote, agreed to a form of alternate dispute resolution? What does that mean, the contractual language? Well, it means, as this court has interpreted, a form of alternative dispute resolution. It could be mediation. It could be arbitration. And here, the appellee manifested his assent to arbitrate, and we agreed with that. If you look at the record as a whole, I'll acknowledge the term alternative dispute resolution is unambiguous in some respects because it has a finite universe of what it could mean, but it's still ambiguous because it could mean multiple things. And this court is permitted by California Supreme Court authority to consider extrinsic evidence to interpret the meaning of the agreement. And when we look at the courts of dealings with the parties, when the dispute first arose, we have the demand for arbitration and the subsequent correspondence with counsel. There was no disagreement about arbitration. The only disagreement arose as to who was going to administer the arbitration. And that can't be a... But this provision didn't only say alternative dispute resolution. It said that you would agree on it later as to why. And ultimately, there was no agreement here. There was an agreement... Everybody assumed they were going to arbitrate, but you didn't... Because the thing had no specificity, there was ultimately no agreement as to how you were going to arbitrate, so it never happened. Not exactly, Your Honor. In fact, if you take the scenario, let's assume we had the most robust arbitration agreement ever that had every bell and whistle under the sun, except it didn't name the person who was going to arbitrate the dispute. And then the parties got into a negotiation over who was going to arbitrate, and they couldn't agree. The appellee would not be able to thwart his obligation to arbitrate just because the parties couldn't agree on an arbitrator. We would go to court, and we would ask the court to appoint an arbitrator at that point. It's just an administrative detail. It doesn't eliminate the core agreement to arbitrate. And it's the same thing with an administrator. If we wanted jams, for instance, and they wanted AAA, and we couldn't reach an agreement, we still have an agreement to arbitrate. That's something that could be presented to the court if we can't reach an agreement. Otherwise, I have a question. What did the district court say about this? Was it an agreement to arbitrate or something else? Well, the district court said it was not, following the logic of the Bonner case that interpreted the exact same agreement of the Arizona district court back in 2017, and ultimately held that it didn't survive based on the survivability clause. As your honor knows, we're here on de novo review, and therefore this court gets to renew that again. Back to Judge Berzon's question earlier, related to the presumption and if it's an arbitration agreement. The Litton case, the U.S. Supreme Court case, while it has its roots in traditional labor law and under a collective bargaining agreement, it plainly says that the presumption applies to dispute resolution provisions, not just arbitration. Excuse me. It was a collective bargaining agreement, but I don't think that's what's just positive. It was interpreting federal law, federal common law, right, because it was a collective bargaining agreement. It was interpreting federal common law. That's correct, your honor. I don't think that's just positive. Why not? This would be decided under California law if it's not an arbitration agreement. It would probably be decided under California law, even if it is an arbitration agreement, but if it's not an arbitration agreement, it certainly wouldn't be decided under California law, right? It's not just positive, your honor, because California and federal law are consistent in that they both have a strong policy in favor of arbitration. That's why the arbitration issue is logically prior. If it's not an arbitration agreement, then as I understand California law, the survivability issue would be decided under ordinary contract principles, and the fact that there's a section that tells you what should survive would probably be just positive because this isn't one of them. But we know it's an arbitration agreement, because the appellee said so, not just once, but twice, and the parties acted accordingly. No one has said it wasn't an arbitration agreement until December of 2018, when I wrote Ms. Vienne and asked and indicated we intended to move to compel arbitration, and for the first time in a letter back, we got a letter saying, we don't think it's an arbitration agreement, and we don't think it survives, but all conduct before that said otherwise. So basically, they just made us- But the agreement had permitted arbitration. I mean, he could have proposed to you that the agreed form of alternative dispute resolution be arbitration if you agree with- before the AAA if you agree with me, but you didn't agree with me, so now I'm saying I don't have to do this because there was no agreement under this sort of murky clause. The only reason- I don't know, what's inconsistent about saying I want to arbitrate under this clause and then saying, but you never agreed to it, so now I'm not going to do it. Well, because that's just not a fair reading of the correspondence. If page 202 of the record, my email says, my clients do not agree to use AAA to administer his arbitration. It doesn't refute arbitration, and it says we can confer to try and reach an agreement on an arbitrator, which happens in every single case that there's an arbitration agreement, and then use his or her applicable service to arbitrate the matter, and then they sent me the demand again, or not again, because they hadn't sent it to me before, and then I sent them proposed arbitrators. They went silent. They presumably huddled up within their law firms and decided like, hey, this is an opportunity to bring a nationwide collective action and challenge this thing, and they file a lawsuit, and here we are a year and a half later. But there can be no doubt when we look at the conduct of the parties before, there was an agreement to arbitrate, and any characterization otherwise by Apelli at this point is pure opportunism, just focused on the part where I indicated that my clients would not agree to arbitrate before AAA. Just going back to the presumption, even if the court disagrees that the presumption applies, which I never really got to say it, but the Lytton court makes clear that it applies to, as a matter of contract interpretation, that they don't intend a pivotal dispute resolution provision to go away, and that can only be negated expressed here by clear implication, but even without it, if we look at the contract as a whole, yes, it has a survivability section that excludes the dispute resolution provision, but that survivability section is not exclusionary. It just says the five sections that it explicitly references that survive. It doesn't say these other ones don't survive or accept this set forth herein, and the court is obligated to interpret the agreement as a whole, and when you look at the agreement as a whole, there's five other sections that would presumably survive absent the survivor provision, sections 5, 17C and D, 18, 20, and 22, and under the interpretation that it didn't survive, the court would have to find that none of those provisions survive, and it makes no sense. In fact, if we look at, you know, paragraph 5, that section provides that diligent agrees to pay an operator agrees to accept as his entire compensation for completing a client engagement a fixed sum, and therefore, if the court held that the dispute resolution provision didn't survive, diligent's obligation to pay wouldn't survive as well. One last point before I yield my time. The agreement is enforceable pursuant to equitable estoppel because the core, the crux of Appelli's claim is that it was misclassified as an independent contractor, and the First Amendment complaint is replete with allegations referencing the owner-operator agreement as being the basis for control. Section 74 says, policy set forth in the owner-operator agreement dictate how and when drivers complete their assignments and control drivers' work, and the paragraphs that follow describe various ways the owner-operator agreement controls their work, and these allegations are incorporated by reference throughout every single claim in the First Amendment complaint, and therefore, the claims are intertwined with the allegations, with the agreement and with the allegations. I really don't understand it. I understand your brief, but I don't understand it now. What's equitably estopped? Oh, the non-signatories are able to enforce the agreement under principle of equitable estoppel because the claims are intimately founded and intertwined with the owner-operator agreement based on the allegations of control that specifically reference the owner-operator agreement  every single one of my claims. I'd like to reserve the rest of my time for rebuttal, Your Honor. Thank you. Ms. Bean. Good morning. May it please the Court, my name is Rachel Behan, and I represent the appellee, Randy Baten. The Court has several avenues for affirming the District Court's denial of diligence motion to compel arbitration. As Judge Berzon noted, the most direct one is to affirm on the ground that there is no arbitration agreement, and thus, diligence motion to compel arbitration pursuant to the FAA must be denied. As I understand diligence, argument diligence does concede that the language of the dispute resolution provision is not itself an agreement to arbitrate, but rather its argument is that plaintiff later agreed to arbitration by filing a demand in the AAA. However, this later proposal was rejected by diligence, and whether an agreement to arbitrate existed is governed by California contract law, which requires an acceptance to be absolute and unqualified. A qualified acceptance is a new proposal. Diligence acceptance, if that's what it could be called at all, was qualified. The parties did not reach a standalone arbitration agreement under California law. If there is no arbitration governed by the FAA, the Court should not reach the other issues diligence presents, which are all matters of contract law interpretation. Diligence has only invoked the FAA as the basis for the Court's appellate jurisdiction, and these issues, including whether the dispute resolution provision survived, whether it extends to non-signatories, and whether the class waiver is enforceable, do not implicate the FAA if there's no arbitration agreement. However, I have a question. May I ask a question? Yes. It looks kind of bad for your client who sent a letter and said he was ready to arbitrate, and now he denies it, right? Your Honor, I would disagree that it makes him look bad. He did offer to arbitrate under certain terms in the AAA, which obviously comes with it a whole set of rules and procedures to ensure the neutrality of arbitrators for the selection of arbitrators, rules governing the procedure, and Diligent rejected that offer and instead proposed to go outside, select an arbitrator outside of any forum, and then use the forum of the arbitrator, and that was not acceptable to the plaintiff, and so as a result, there was no agreement to arbitrate, and plaintiff did not waive- And for that purpose, it doesn't really matter whether the request to arbitrate was under the dispute resolution provision or outside of it, because under it, you still have to have an agreed form of alternative dispute resolution, so if it wasn't agreed upon, then there was no obligation under the dispute resolution provision to go forward, so it's kind of murky whether we're talking about a demand under the agreement or an outside demand that doesn't really matter. If it ultimately wasn't agreed upon, it's still California law that applies in either case. Yes, that's right. The dispute resolution provision, the ADR part of it, was essentially an agreement to agree, which under California law is generally unenforceable because it called upon the parties to reach a later agreement to determine what form of ADR was acceptable to them, and because there was no- and so although the ADR provision permitted the parties to choose arbitration as a form of ADR, it did not require them to do so, and so for that reason, Diligent's argument that the fact that plaintiffs later filed an arbitration in the AAA does not show that the parties intended for the ADR provision to require arbitration in the first place. I'm not looking into it to try to understand the text of the dispute resolution provision, and it's not a model of clarity, but isn't the most reasonable reading of it that the reference to ADR must mean arbitration because it says the parties agreed to resolve any disputes either directly or with an agreed form of ADR, so basically the parties are saying we're going to work it out together or through ADR, and it couldn't- ADR there couldn't mean mediation because then there really would be no way to resolve it. You can't go to court, parties don't resolve it directly, and the mediator has no power to resolve anything, so it seems like the most reasonable reading of this is the reference to ADR has to mean arbitration here. Your Honor, I respectfully disagree. Any contract under California law has to be interpreted according to express terms, and here the express terms of the dispute resolution provision do not require arbitration. Under California law, arbitration is a method of dispute resolution, but arbitration and dispute resolution are not interchangeable terms, so it isn't, in our view, the explicit terms of the agreement control, and the explicit terms are that the parties could agree to a mutually agreeable form of ADR that could be mediation, that could be negotiation, that could be binding arbitration, but really the agreement doesn't say, and it leaves for a later agreement for the parties to make that decision. Couldn't the phrase agreed form of ADR mean whether we use AAA or we use some other ADR services or some other service, arbitration service? No, it doesn't. You have to interpret the words according to their popular and known meaning, and ADR, even if you look at Black's Law Dictionary, is defined as more than just arbitration. Arbitration has a meaning under the law, but ADR refers to lots of different forms of alternative dispute resolution, essentially resolution outside of court, and so it could be mediation. Sorry? Isn't there at least one nine-striker case that talks about what ADR includes? Maybe it's the Greenwood case. I don't remember, but in any event, I mean, it occurs to me, for example, that the Northern District of California has an ADR requirement, but there's a list of what, and there's a choice of what alternative dispute resolution schemes can be used, which include arbitration and mediation, but also early neutral evaluation, mini-trials, private judging, and so on. So there's a bunch of them. All right. Yes, Your Honor, I agree. I do want to address the state law questions to the extent the court does reach them, and if it does reach them, it should affirm the district court's decision that the dispute resolution provision did not survive the agreement. Litton did not announce a general federal common law of survivability. But even if it did, it wouldn't apply here. Exactly. The court was operating under the authority of federal statutes to develop a body of federal common law applicable to collective bargaining agreements. And so that's really the context in which the decision was made. Here, certainly, there's no collective bargaining agreement. And here, even if the court were to extend Litton beyond a CBA dispute to a dispute between private parties involving an arbitration agreement, as I've already argued, there is no arbitration agreement here. And so consequently, the court need not decide whether to extend Litton beyond the federal labor context in order to decide this appeal. Moreover, here, unlike in Litton, there is an express survival clause that omits mention of the dispute resolution provision. The survival clause is positioned directly after the dispute resolution provision. And the clause demonstrates the party's intent for certain provisions to survive termination of the agreement, but not the dispute resolution provision. The agreement is not ambiguous as to the party's intent regarding which provisions would survive. And thus, there is no basis for the introduction of extrinsic evidence as to what the parties intended. The cases on which appellants rely, including the Sixth Circuit case, where the court, relying heavily on the presumption of arbitration, held that the survival clause did not end the discussion of whether or not the arbitration agreement survived. There, the agreement was different. There, the agreement did contain other provisions that specifically expressed the intent for the provision to survive. And so, for example, there was a non-compete provision in that case that stated that it would extend for 12 months following the termination of the agreement, and that particular non-compete provision was not included in the survival clause. And so, the court, looking at that, said, well, there's ambiguity there as to whether the parties intended the survival clause to include all of the terms meant to survive. That, I think, coupled very much with a strong presumption in favor of arbitrability, led the court to find that the dispute resolution or the arbitration clause there survived termination of the agreement. We don't, Diligent hasn't pointed to similar clauses of the arbitration agreement that give rise to that intrinsic ambiguity. Yes, Your Honor. The dispute clause was not an arbitration clause. Is this issue properly before us, the survivability question? Your Honor, we would say that the court should not rule on these matters of state law contract interpretation. Oh, could we? I mean, do we have jurisdiction at that point? We only have jurisdiction because of the FAA. That's right. If it's not an arbitration clause, doesn't our jurisdiction go up in smoke at that point? That would be our position, and that's the only basis on which Diligent has relied. The other questions, if there's no arbitration agreement, really comes down to whether the court is going to order specific performance of the contract. And here, the court did not do so on the ground that the dispute resolution provision did not survive the contract. Ultimately, you have to win on the survival issue because, among other things, I mean, there's this very vague, strange position that says you have to resolve it, either directly or, I mean, as Judge Lee said, one way or another, you are contracted to resolve it, meaning not go to court, as I understand it. So if it doesn't survive, if it does survive, you're probably out of court. Oh, Your Honor, we would disagree that even if it survives, the dispute resolution provision is not itself enforceable. And here's why. First, the ADR provision, as I mentioned, is essentially an agreement to agree. And under California law, such indefinite provisions are just not enforceable. It's not because it's ambiguous. It's clear what it requires. The problem is that when it comes to specific performance, the court has to know what compliance means. It has to know what it's ordering the parties to do. And here, the court doesn't, there is no final agreement. The parties still have to agree on the method of ADR. And so as the court opined in its tentative ruling when it was discussing this issue, asked to compel an agreed form of alternative dispute resolution, the court would struggle to identify what such an order would look like or entail, or how it would be expected to monitor or enforce compliance. What did the court do with this? And after it decided that it wasn't survived, well, once it decided that it didn't survive, then it didn't matter. True, that's true. But before the court decided that it didn't survive, it issued a tentative ruling where it sort of mulled over all the different ways in which the court could deny the motion to compel arbitration. And one of the ways was even if it did survive, that it would not be enforceable. And so we're not saying that was the court's final ruling. It didn't ultimately reach that question, but it supplies another basis for the court to conclude that the ADR provision should not be enforced. Similarly, so if that is, putting that aside, if you look at the negotiate directly provision, it's also too indefinite to enforce. There's no basis for determining what might constitute compliance or a breach. And moreover, even if the parties were ordered to resolve the claims directly, that can preclude plaintiff from filing in court if those efforts fail. The right to a jury trial cannot be waived under the California constitution unless the waiver is pursuant to statute. And while California law allows for the waiver of the right to a jury trial in the case of arbitration, there's no provision of California law that would permit a pre-dispute waiver where the agreement calls for the parties to resolve their claims directly outside of any forum. The California Labor Code also prohibits plaintiff's statutory claims from being waived pursuant to any private agreement. So leaving resolution of his claims to the discretion of defendants and whether they're willing to reach a reasonable compromise would effectively constitute a waiver of plaintiff's Labor Code claim. And so for those reasons, we would argue that to the extent that the court could order specific performance of the directly prong, that it can only be construed as an exhaustion requirement, which in this case, the parties have already satisfied. And it cannot constitute a waiver of the plaintiff's right to seek redress in court if the parties are not able to resolve the claims directly. Very, very, very briefly, just in terms of the non-signatories, none of the doctrines on which diligent relies support allowing the non-signatories to enforce the agreement. And finally, if I may just conclude, to the extent the court does reach the question of whether the class action waiver is enforceable, that issue should be remanded to the district court in the first instance, since it requires certain factual findings under the California Supreme Court's Gentry case. And none of the federal arbitration cases on which diligent relies apply here, given that there is no arbitration agreement. Thank you. Thank you very much. Thank you, Your Honor. Just a few quick points. The absence of a presumption, even under California law, would lead to an absurd result. It would allow a claimant to lie in wait for the contract to terminate to absolve himself of the obligation to arbitrate a dispute. Here, the evidence is Mr. Batten's declaration says that he contacted a lawyer in 2017 before the agreement terminated in order to bring claims. And he averts, although I think it's hearsay in Lacks Foundation, that his lawyer contacted diligent. And then a week later, the contract terminates. And if there is no presumption of survivability, he would be allowed just to essentially wait out the termination of his contract. But you're assuming there was an arbitration agreement. I mean, that's why I keep saying that's a logically prior question. You're assuming there was an arbitration agreement. Let's suppose it wasn't an arbitration. I'm not assuming it, Your Honor. There was an alternative dispute resolution agreement. And based on just the discourse today in the court, there's a disagreement as to what that means. And the California Supreme Court case of Bowman v. Berg says, quote, Although an agreement may be indefinite or uncertain in its inception, subsequent performance by the parties under the agreement will cure this defect and render it enforceable. And it's our position that the subsequent conduct rendered it an enforceable arbitration agreement, Your Honor. You started by talking about the survivability issue, but in order to talk about it, you assumed it was an arbitration clause. Or you said it was an arbitration clause. If we didn't think it was an arbitration clause, the survivability issue would look different. That's all I'm trying to say. I understand, Your Honor. On the jurisdictional point, I just want to point out that the, I still think there's been a blurring in the discussion about jurisdiction and merits. The 11th Circuit case of advanced body care v. Thione has said a non-frivolous claim that a party had an agreement to arbitrate and the denial of the motion to compel is sufficient for appellate jurisdiction. And if the court... No, but once you decide there's no arbitration agreement, then what? Then you keep going on whatever else you might have wanted to raise, even though the only reason we're here is because of the FAA. Even once we've decided there's no arbitration agreement, if we've decided that? No, Your Honor. I see my time has expired. May I respond? Is there any case like that? A case in which there was jurisdiction under the FAA to decide whether there was an agreement to arbitrate. You then decide there's no agreement to arbitrate, but you go on to decide a bunch of other things. Well, it's not a bunch of other things they decided under California law at that point. It would just... All it would mean is that the court has original jurisdiction to hear it based on the FAA and if the court finds that the FAA is inapplicable, then the analysis under California. Is there any case that ever did that? I'm sorry, Your Honor? Is there a case that's ever done that? After you decide that there was no agreement covered by the FAA, you still go on and decide everything? I don't have one top of mind, but I believe the cases in the papers, Your Honor, have situations where the court has analyzed the arbitration agreement under both federal and state law and there would be no reason to address it under state law unless the court found that the FAA wasn't applicable at that point because the FAA otherwise preempts state law. It doesn't entirely. It incorporates state law for many purposes. To the extent inconsistent, Your Honor. Sorry, it was an incomplete thought. I see my time is up. Your Honors, have any further questions? Thank you very much. Helpful arguments. The case of Banton v. Michigan Logistics is submitted and we'll take a short break.
judges: Siler, Berzon, Lee